UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| MARIANNA CAMPBELL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY.<br><br>Defendant. | Case No.: 1:21-cv-774<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Marianna Campbell ("Plaintiff") on behalf of herself and all others similarly situated, hereby submits the following Class Action Complaint ("Complaint") against Defendant The Procter & Gamble Company. ("Defendant" or "P&G"), and upon personal knowledge as to her own acts and status, and upon investigation of counsel and information and belief as to all other matters, alleges as follows:

**NATURE OF THE ACTION**

1. The Procter & Gamble Company is a large, multinational corporation that produces hundreds of different types of consumer health, hygiene, and beauty products across approximately 65 brands.

2. Among P&G's more well-known brands are Old Spice and Secret, two brands of antiperspirant and deodorant. These are predominantly sold in two forms: stick and spray. The spray deodorants are aerosolized.

3. On November 3, 2021, independent laboratory Valisure released the results of testing of numerous brands of aerosol antiperspirant and deodorant for the presence of benzene.

1

4. Benzene is a volatile organic compound used for many industrial purposes, including as an industrial degreaser. However, it is carcinogenic to humans. As a result, the FDA has issued guidance that it should not be present in drugs, excipients, or drug products in concentrations in excess of two (2) parts per million ("ppm").

5. However, the presence of benzene in any concentration is an adulterant. Antiperspirant and deodorant sprays are recognized as over-the-counter ("OTC") drugs by the FDA. *See* 21 C.F.R. § 350.3. The presence of benzene should be clearly disclosed on any labelling for products that contain it.

6. Antiperspirant and deodorant sprays are thus subject to labelling and quality standards, including the correct listing of ingredients under 21 CFR 201.66.

7. Valisure tested 108 aerosol deodorants for the presence of benzene. 12 different Old Spice and Secret batches (the "Affected Products", defined *infra*) tested in excess of 2 ppm, some as high as 17.7 ppm. Valisure found another three batches will levels between 1 and 2 ppm, a readily detectable level which is still potentially hazardous.

8. None of the Affected Products list benzene as an ingredient, either active or inactive. The presence of benzene in the Affected Products is thus an adulterant.

9. Plaintiff brings this lawsuit against P&G on behalf of herself and a Nationwide Class and a Michigan Subclass of all other similarly situated purchasers of the affected products in the United States, alleging claims of breach of implied warranty, unjust enrichment, and the Michigan Consumer Protection Act, MLCS § 445.901 *et seq*.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000

exclusive of interest and costs, and there are numerous class members who are citizens of states other than P&G's state of citizenship, which is Ohio.

11. This Court has personal jurisdiction over P&G because a substantial portion of the wrongdoing alleged in this Complaint took place in the Ohio and because P&G has its principal place of business in and is authorized to do business in Ohio.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because P&G resides in this District, many of the acts and transactions giving rise to this action occurred in this District and because P&G is subject to personal jurisdiction in this District.

## PARTIES

*Plaintiff*

13. Marianna Campbell is a citizen of Michigan, residing in Grand Rapids. On or about November 2021, Plaintiff Campbell purchased an aerosol can of Secret Outlast Protecting Powder 48 HR Sweat & Odor aerosol deodorant at a Walgreens in Grand Rapids, paying approximately $7.00. Plaintiff Campbell has purchased this product on a continual basis for approximately 22 years. Plaintiff Campbell would not have purchased the deodorant or paid as much for it had she known that it contained dangerously high levels of benzene.

*Defendant*

14. The Procter & Gamble Company is an Ohio corporation with its principal place of business at 1 Procter & Gamble Plaza, Cincinnati, Ohio, 45202.

## FACTUAL ALLEGATIONS

15. P&G developed and has made Secret antiperspirant and deodorant since 1956.[1] P&G has owned and distributed Old Spice antiperspirant and deodorant since 1990.[2]

---

[1] *See* https://secret.com/en-us/about, last accessed December 8, 2021.

16. P&G makes several different formulations of Old Spice and Secret antiperspirant and deodorant, including versions in both spray and stick form.

17. As states *supra*, independent laboratory Valisure recently tested 108 different deodorants and antiperspirants for the presence of benzene.[3] This testing included twenty-two versions of Old Spice and Secret antiperspirant.[4]

18. Benzene is an industrial chemical that is widely recognized as a carcinogen. As the CDC notes, "Benzene works by causing cells not to work correctly. For example, it can cause bone marrow not to produce enough red blood cells, which can lead to anemia. Also, it can damage the immune system by changing blood levels of antibodies and causing the loss of white blood cells."[5]

19. The CDC further cautions against long-term exposure to benzene, stating:

> The major effect of benzene from long-term exposure is on the blood. (Long-term exposure means exposure of a year or more.) Benzene causes harmful effects on the bone marrow and can cause a decrease in red blood cells, leading to anemia. It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.
> Some women who breathed high levels of benzene for many months had irregular menstrual periods and a decrease in the size of their ovaries. It is not known whether benzene exposure affects the developing fetus in pregnant women or fertility in men.
> Animal studies have shown low birth weights, delayed bone formation, and bone marrow damage when pregnant animals breathed benzene.
> The Department of Health and Human Services (DHHS) has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene in the air can cause leukemia, cancer of the blood-forming organs.[6]

---

[2] *See* https://www.upi.com/Archives/1990/06/13/PG-buys-Old-Spice-Santa-Fe-lines-for-300-million/9424645249600/, last accessed December 8, 2021.
[3] https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf, last accessed December 12, 2021.
[4] *Id.*
[5] https://emergency.cdc.gov/agent/benzene/basics/facts.asp, last accessed December 12, 2021.
[6] *Id.*

20. Antiperspirants and deodorants are designed to be worn on the skin virtually all day. Some, such as the product purchased by Plaintiff, are specifically advertised to be worn for up to 48 hours at a time. However, every antiperspirant or deodorant is designed with the expectation that it will be reapplied on a daily or near-daily basis. As a result, anyone using a deodorant or antiperspirant adulterated with benzene would have near-constant exposure to it for periods of years.

21. Additionally, antiperspirants and deodorants are over-the-counter drugs (and, in some cases, cosmetics) regulated by the FDA, under the Food, Drug, and Cosmetics Act.[7]

22. The FDA lists benzene as a Class 1 solvent, and while it does not set a specific level at which a product is *allowed* to contain benzene, the FDA states that, "Solvents in Class 1. . .should not be employed in the manufacture of. . .drug products because of their unacceptable toxicity or their deleterious environmental effect. However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted to [2 ppm for benzene] unless otherwise justified."[8]

23. The presence of benzene is far from unavoidable in deodorants and antiperspirants, as evidence by 1) the number of tested antiperspirants and deodorants whose tested benzene levels were below 0.1 ppm, and 2) the fact that P&G recalled several different brands of deodorant and antiperspirant spray following Valisure's public letter.

24. Additionally, the presence of benzene at detectable levels must be disclosed within the ingredient list where present in P&G's products. The fact that it is not disclosed under 21 CFR 201.66 constitutes mislabeling on the part of P&G.

---

[7] https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf, last accessed December 12, 2021.
[8] https://www.fda.gov/media/71737/download, last accessed December 12, 2021.

5

25. The following spray deodorants and antiperspirants (the "Affected Products") were tested by Valisure and found to have levels of benzene at detectable, quantifiable levels:

Old Spice, Pure Sport antiperspirant at 17.7 ppm of benzene

Old Spice, Pure Sport antiperspirant at 17.4 ppm of benzene

Secret, Powder Fresh 24 HR antiperspirant at 16.2 ppm of benzene

Secret, Powder Fresh 24 HR antiperspirant at 16.1 ppm of benzene

Secret, Powder Fresh 24 HR antiperspirant at 12.5 ppm of benzene

Old Spice, Below Deck, Powder Spray, Feel Drier & Cleaner, Down Below, Fresh Air deodorant at 5.22 ppm of benzene

Secret, Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose antiperspirant at 4.85 ppm of benzene

Old Spice, Sweat Defense, Stronger Swagger, Dry Spray, Sweat & Odor Protection antiperspirant at 4.54 ppm of benzene

Old Spice, Pure Sport antiperspirant at 3.34 ppm of benzene

Secret, Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose antiperspirant at 2.58 ppm of benzene

Secret, Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Light Essentials antiperspirant at 1.64 ppm of benzene

Secret, Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Waterlily antiperspirant at 1.35 ppm of benzene

Secret, Out Last, Protecting Powder, 48 HR Sweat & Odor, Protection, Dry Spray antiperspirant at 1.24 ppm of benzene

Old Spice Sweat Defense, Ultimate Captain, Dry Spray, 48 Hour, Sweat & Odor Protection antiperspirant at 0.44 ppm of benzene

26. Notably, several of these formulations were tested by the Chemical and Biophysical Instrumentation Center at Yale University and were found to have levels of benzene comparable to those found by Valisure.

6

27. P&G has initiated a recall, but the recall is wholly inadequate to the needs of Plaintiff and Class members. The recall limits reimbursement to three products, does not fully cover the products listed in the Affected Products, and does not disclose the results that P&G received from their own testing. Instead, the recall merely states, "Daily exposure to the level of benzene detected would not be expected to cause adverse health consequences and we are conducting this recall out of an abundance of caution."[9]

28. As a result, Plaintiff and Class Members are thus inaccurately informed as to the potential dangers of the Affected Products. Further, P&G makes no efforts to describe whether it conducted its own testing and whether other products, not tested by Valisure or Yale University, also contained detectable levels of benzene.

29. Further, there is no mechanism by which Plaintiff and Class Members may receive full refunds for products they have bought and purchased over three, but within the statute of limitations (the "Class Period.")

30. As a result, P&G has omitted material facts and deceived Plaintiff and Class Members about the safety of its products and deprived them of the ability to receive the full value of all purchases made within the Class Period.

**CONCEALMENT OF UNLAWFUL CONDUCT AND EQUITABLE TOLLING**

31. Plaintiff disclaims any burden to plead facts regarding the statute of limitations. By its very nature, as alleged herein, Defendant's unlawful activity was self-concealing. By Defendant's affirmative acts, misrepresentations, and nondisclosures, any applicable statute of limitations on claims asserted by Plaintiff and members of the Class have been and are tolled.

32. Further, Defendant routinely updated its false and misleading representations, so

---

[9] https://secret.com/en-us/aerosol-recall, last accessed December 12, 2021. (Similar language is present on the Old Spice recall page.)

7

as to make it appear that their representation was, in fact, valid. These actions continued the conduct complained of until at least the publication of the Report.

33. Plaintiff and members of the Class had no knowledge of the unlawful conduct alleged in this Complaint, or of any facts that could or would have led to the discovery thereof, until at least November 2021. In the exercise of reasonable diligence, Plaintiff could not have discovered Defendant's violations of law such that suit could be brought before February 2020.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All consumers in the United States who purchased any of the Affected Products during the Class Period (the "Class").

Excluded from the Class are P&G and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof. Moreover, this Complaint does not assert, and is not intended to assert, Class standing for personal injury claims, or any damages therefrom.

35. Plaintiff also brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a subclass defined as:

> All consumers in the State of Michigan who purchased any of the Affected Products during the Class Period (the "Michigan Subclass" or the "Subclass").

Excluded from the Subclass are P&G and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Subclass; governmental entities; and the judge to whom

this case is assigned and any immediate family members thereof. Moreover, this Complaint does not assert, and is not intended to assert, Subclass standing for personal injury claims, or any damages therefrom.

36. Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37. **Numerosity – Fed. R. Civ. P. 23(a)(1)**. The members of the Class are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff, Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

38. **Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. All Class and Michigan Subclass members have been subject to the same or substantially the same false and misleading claims at the heart of this action, which were present in all of the packaging referenced herein. Furthermore, common questions of law and fact include, but are not limited to:

    a. Whether P&G has been unjustly enriched as a result of the conduct complained of herein;

    b. Whether P&G engaged in unfair, unconscionable, false, misleading, and/or deceptive labeling, advertising, marketing and/or promotion of the Affected Products;

  c. Whether P&G engaged in unfair or unconscionable, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce;

  d. Whether Plaintiff and the other members of the Class and Subclass are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount; and

  e. Whether Plaintiff and the other members of the Class and Subclass are entitled to equitable relief, including but not limited to restitution.

39. **Typicality – Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all Class members were comparably injured through the uniform misconduct described above, were subject to P&G's unfair, false, misleading, and/or deceptive claims with regard to the Affected Products.

40. **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and her counsel.

41. **Superiority – Fed. R. Civ. P. 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against P&G, so it would be impracticable for Class members to individually seek redress for P&G's wrongful conduct. Even if the Class members could afford individual litigation, the

court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Unjust Enrichment
### (Individually and on Behalf of the Class and Subclass)

42. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

43. Plaintiff and the other Class members conferred a benefit upon P&G, in the form of the excess prices they paid for the Affected Products over and above the actual value of the products.

44. P&G had an appreciation or knowledge of the excess prices paid for the Affected Products by Plaintiff and the other members of the Class and Subclass.

45. P&G's acceptance or retention of these benefits is inequitable under the circumstances as outlined above.

46. Plaintiff, on behalf of herself and the other members of the Class, seek restitution or, in the alternative, imposition of a constructive trust on the funds inequitably received and retained.

### SECOND CLAIM FOR RELIEF
### Breach of Implied Warranty
### (Individually and On Behalf of the Class and Subclass)

47. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

48. P&G sold the Affected Products in its regular course of business. Plaintiff and Class and Subclass members purchased the Affected Products.

49. Defendant routinely engages in the manufacture, distribution, and/or sale of the Affected Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

50. However, the Affected Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances. Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

51. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they paid money for Affected Products that would not pass without objection in the trade or industry under the contract description.

52. P&G's breach of warranty has caused Plaintiff and Class and Subclass members to suffer injuries, paying for objectionable products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of P&G's breach of warranty, Plaintiff and Class and Subclass members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

53. As a result of P&G's breach of these warranty, Plaintiff and Class and Subclass members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

**THIRD CLAIM FOR RELIEF**
**The Michigan Consumer Protection Act, MCLS § 445.901 *et seq.***
**(Individually and On Behalf of the Michigan Subclass)**

54. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

55. P&G's conduct, as alleged herein, constitutes unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of any trade or commerce within the scope of violation of MCLS § 445.903.

56. P&G's practices specifically violate MCLS §§ 445.903 (s) and (cc) in that P&G's omissions of material fact which tend to mislead or deceive consumers and could not be reasonably known by them and are "material to the transaction in light of representations of fact made in a positive manner."

57. Plaintiff and the other members of the Class have been injured by P&G's unfair, unconscionable, or deceptive deceptive methods, acts, or practices in conjunction with its marketing and sale of the Affected Products.

58. Pursuant to MCLS § 445.911(4), Plaintiff and each of the other members of the Michigan Subclass are entitled to recover actual damages, plus their reasonable attorneys' fees and the costs, including notice costs, of this action.

59. Plaintiff and the other members of the Michigan Subclass are also entitled to injunctive relief in the form of an order directing Defendant to cease its false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court order the following relief:

A. An Order certifying the Class and Subclass as requested herein;

B.     An Order awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the other members of the proposed Class and Subclass;

C.     An Order awarding equitable relief, including: enjoining Defendant from continuing the unlawful false advertising practices as set forth herein, directing Defendant to retrieve existing false and misleading advertising and promotional materials, directing Defendant to engage in a corrective advertising campaign, directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution, and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

D.     An order awarding actual damages and punitive damages as allowable by law;

E.     An Order awarding attorneys' fees and costs to Plaintiff and the other members of the Class; and

E.     Such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

DATED: December 14, 2021              Respectfully Submitted,

*/s/ Michelle L. Kranz*

ZOLL & KRANZ LLC
Michelle L. Kranz (0062479)
Carasusana B. Wall (OH 0090234/MI P76722)
6620 West Central Avenue
Suite 100
Toledo, Ohio 43617
Telephone: (419) 841-9623
Facsimile: (419) 841-9719
michelle@toledolaw.com
cara@toledolaw.com

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
Matthew M. Guiney (NY: 4181210)
 (*Pro Hac Vice Application Forthcoming*)
270 Madison Ave.
New York, NY 10014
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
guiney@whafh.com

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC
Carl V. Malmstrom (IL: 6295219)
 (*Pro Hac Vice Application Forthcoming*)
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 686-0114
malmstrom@whafh.com

*Attorneys for Plaintiff*